TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-00-00795-CV







Tim Jamail, Appellant




v.




The City of Cedar Park, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT


NO. 98-10483, HONORABLE MARY PEARL WILLIAMS, JUDGE PRESIDING







 Tim Jamail, appellant, sued the City of Cedar Park ("the City") seeking a declaratory
judgment that he is entitled to the refund of certain community impact fees ("CIFs") pursuant to a
City ordinance, and reimbursement of certain subsequent user fees ("SUFs") pursuant to a contract
with the City. The district court granted the City's motion for summary judgment and denied
Jamail's motion for partial summary judgment. Jamail appeals only the district court's grant of the
City's motion. Because we conclude there are several genuine issues of material fact to resolve, we
reverse and remand for a trial on the merits.


BACKGROUND


 During the 1980's, Cedar Park experienced substantial population growth, placing a
burden on its water service utilities. To combat this problem, the City was forced to expand its
existing facilities. It financed this endeavor in part by enacting the Community Impact Fee
Ordinance in March 1985. The ordinance requires all new water and wastewater customers in Cedar
Park to pay a one-time CIF to the City. The fee is assessed per Living Unit Equivalent (LUE) (1) and
is divided into four components, two for water and two for wastewater. One of the wastewater
components includes money for wastewater lines, pump stations, and force mains, in the amount of
$488 per LUE.

 As an incentive to developers who provide lines of credit to reserve wastewater-line
capacity, and thus help to finance the water and wastewater improvements, the ordinance provides
under section 6(A)(4) that:


Persons who post, or have posted, letters of credit with the City to reserve line
capacity for wastewater services shall be given credit for the line increment of the
Community Impact Fee to the extent of such letters of credit, but shall remain
responsible for any line increment fee in excess of such letters of credit, and for the
plant increment of such fee. 



(Emphasis added.) Once a developer constructs a subdivision and seeks to have homes connected
to City water and wastewater lines, the developer has to pay the CIF. Apparently, the ordinance
allows developers who meet the section 6(A)(4) requirements to receive a credit of up to $488 per
LUE for the wastewater-line component of the CIF, based on the amount provided in the letter of
credit.

 During the same year the ordinance was enacted, Jamail purchased a 110-acre tract
of land to develop the Cypress Bend subdivision. To connect the subdivision with the City's sewage
treatment plant, three wastewater transmission lines--the Central Interceptor, the Buttercup Creek
Interceptor, and the Cypress Bend Approach Main--were constructed. (2) Jamail participated
financially in the construction of all three lines.

 After completion of Phase I of his Cypress Bend subdivision, Jamail wrote a letter
to the City requesting a partial refund of the wastewater-line component of the CIFs paid for the
subdivision pursuant to the ordinance. In the letter, Jamail set forth the amounts of the letters of
credit he had allegedly posted for each of the three projects, and the number of LUEs each project
would serve. Jamail calculated the refund per LUE, up to a maximum of $488. In total, Jamail
requested $22,835.09 for Phase I. (3)

 In January 1987, on behalf of the City, Tom Ice, city engineer, sent Jamail a check
for $23,271.75 (4) (hereinafter "the 1987 refund") accompanied by a letter stating: "This rebate is from
the wastewater line[] [component] of the Community Impact Fee Fund in accordance with Ordinance
No. 85-21. This is the portion of your letter of credit for oversizing lines eligible from C.I.F.'s paid."

 In November 1997, after completing Phase II of Cypress Bend and after having paid
all CIFs for the entire subdivision, Jamail wrote another letter to the City requesting a refund of the
wastewater-line component of the CIFs. Using the same calculation he used for the 1987 refund,
Jamail requested $29,416.20. The City did not respond to the letter, and in December 1997, Jamail
faxed a second request for the refund. Jamail's attorney sent a third and final request in February
1998. The City never sent the requested refund.

 In September 1998, Jamail brought suit for declaratory judgment that he was entitled
to a refund of $29,416.20 for CIFs pursuant to the ordinance. (5) Jamail later filed a motion for partial
summary judgment and the City filed a motion for summary judgment on all claims. The district
court denied Jamail's motion and granted the City's motion. In addition, the district court held that
each party was to pay its own costs.

 Jamail appeals only the district court's grant of the City's motion for summary
judgment. The City requests that the Court modify the judgment to award it all costs incurred in this
cause and affirm the judgment as modified.


STANDARD OF REVIEW


 The function of summary judgment is not to deprive litigants of the right to a trial by
jury, but to eliminate "patently unmeritorious claims or untenable defenses." Swilley v. Hughes, 488
S.W.2d 64, 68 (Tex. 1972) (citation omitted). Toward this end, the applicable standards for
reviewing summary judgment are well-established: (1) the movant for summary judgment has the
burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as
a matter of law; (2) in deciding whether there is a genuine issue of material fact precluding summary
judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable
inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. Nixon
v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985). The propriety of summary judgment
is a question of law; therefore, we review the trial court's decision de novo. See Texas Dep't of Ins.
v. American Home Assurance Co., 998 S.W.2d 344, 347 (Tex. App.--Austin 1999, no pet.).


DISCUSSION


 Each project--the Central Interceptor, the Buttercup Creek Interceptor, and the
Cypress Bend Approach Main--involves different fact issues, and Jamail raises separate arguments
for reversal of the summary judgment for each project. Thus, we will discuss each project separately
and in the order it was constructed. We then address the City's request for costs and fees.


Central Interceptor

 The Central Interceptor was the first line constructed. Jamail posted a $72,289.55
letter of credit to the City to reserve wastewater-line capacity. Both Jamail and the City agree that
Jamail's letter of credit for this project places him under the ordinance, making him eligible for a
"credit."

 Jamail contends that although the ordinance uses the terminology "credit," this does
not preclude a cash refund. The basis of his argument is that credit and cash are not mutually
exclusive concepts. (6) In addition, he argues that because the City provided a cash refund in 1987, it
cannot now argue that the ordinance only allows for a credit toward future monies owed, and not
cash. He alleges that justice, honesty, and fair dealing require that we make an exception to the
general rule that cities are not subject to estoppel, and consequently, the City should be forced to
stand by its previous interpretation of "credit" evidenced by the 1987 refund. See Roberts v. Haltom
City, 543 S.W.2d 75, 80 (Tex. 1976); Clear Lake City Water Auth. v. Winograd, 695 S.W.2d 632,
640 (Tex. App.--Houston [1st Dist.] 1985, writ ref'd n.r.e.). Lastly, Jamail argues that as the
subdivision is completed, he no longer owes any money to the City. Therefore, he claims that the
ordinance must allow a cash refund or he receives nothing in exchange for funding the project. (7)

 The City counters that the ordinance entitles Jamail only to a credit toward future
monies owed to the City and does not provide for cash refunds. In addition, the City argues that it
cannot be estopped from making this argument based on the 1987 refund, because cities are not
subject to estoppel. See Dillard v. Austin Indep. Sch. Dist., 806 S.W.2d 589, 594 (Tex.
App.--Austin 1991, writ denied). A City employee sent the 1987 refund, and the City relies on a
case holding that the statements of an individual City employee are not binding on the City. Alamo
Carriage Serv. Inc. v. City of San Antonio, 768 S.W.2d 937, 941 (Tex. App.--San Antonio 1989,
no writ). The City can act only by and through its governing body. Id.

 The City is correct when it states the general rule that municipalities are not subject
to estoppel in the exercise of governmental functions. City of Hutchins v. Prasifka, 450 S.W.2d 829,
835 (Tex. 1970). However, there are exceptions to this rule. Id. at 836. The goal of estoppel is to
prevent injustice and the court's equitable power to carry out this goal "may not be frustrated by rules
of law that limit or preclude the responsibility of the City for the conduct of its officials." Roberts,
543 S.W.2d at 80. The City may be estopped only in exceptional cases where the circumstances
clearly demand it to prevent manifest injustice. Prasifka, 450 S.W.2d at 836.

 It is not possible to discern from this record, as a matter of law, whether estopping
the City will create interference with the exercise of its governmental functions or prevent manifest
injustice. See id. The ordinance's lack of a definition for the term credit, and the issuance of the
1987 refund, lead us to conclude that there is a genuine issue of material fact as to the meaning of
the term credit. Therefore, indulging reasonable inferences in favor of Jamail, as the nonmovant,
we hold that this issue cannot be resolved by summary judgment.


Buttercup Creek Interceptor

 A. Jamail's Request for a Refund Under the Ordinance

 The Buttercup Creek Interceptor is unique in that a contract between the City and
Milburn, Inc. governed its construction. There were also seven signatories to the contract, described
as "participants." According to the contract, Milburn was to manage construction of the line and the
participants were to pay for the line by providing letters of credit from which Milburn would draw. 
Each participant's share of the cost was based on its allocated LUEs. Although the City was a party
to the contract, its role was minimal. The City gave final approval to the construction but, in general,
responsibility for the project fell on Milburn and the participants.

 Jamail posted a $77,963.05 letter of credit for the Buttercup Creek Interceptor, as
required by the contract. Jamail argues that this letter of credit was to the City and thus entitles him
to a refund under the ordinance. He asserts that the City did not provide any evidence to the contrary
in support of its motion for summary judgment. He also argues that the City's 1987 refund of CIFs
for the Buttercup Creek Interceptor estops the City from stating that he is not entitled to a refund
under the ordinance.

 The City argues that the contract, and not the ordinance, governs this project. The
City also maintains that letters of credit for projects constructed under separate contracts are not
covered by the ordinance. The City claims that Jamail cannot recover under the ordinance because
Jamail's letter of credit was to Milburn, and not the City. The City contends that based on the
contract, Milburn and the participants were responsible for the construction of the project and thus
the City had no need for letters of credit on this project.

 It is unclear from the face of the letter of credit, which is to a bank, whether it was
for the benefit of the City or Milburn. Neither the City nor Jamail offered evidence to prove whether
the City or Milburn drew on the letter of credit. Thus, it is impossible to determine, as a matter of
law, whether Jamail can claim a refund under the ordinance. The fact that the City did provide a
refund for the wastewater-line component of the CIFs for the Buttercup Creek Interceptor in 1987
further complicates this issue. Therefore, resolving all doubts in favor of Jamail, as nonmovant, the
City has not shown itself entitled to summary judgment.



 Jamail's request for Subsequent User Fees Under the Contract


 According to the contract regarding the Buttercup Creek Interceptor, individuals who
utilized unallocated LUEs, and who were not parties to the contract (such as subsequent homeowners
in the subdivision), were to pay SUFs to Milburn. The purpose of these fees was to ensure that all
who had the privilege of using LUEs would eventually pay their share of the cost of constructing the
Buttercup Creek Interceptor. Milburn was to distribute these fees to participants who had paid to
fund the oversize portion of the line on a pro rata basis.

 Jamail claims that he has never received his share of the SUFs from either Milburn
or the City. Jamail asks for a declaratory judgment against the City on this point based on the theory
that, as a party to the contract, the City can force Milburn to distribute the fees. The City argues that
because the City does not receive the SUFs, it has no power to ensure Milburn properly disburses
them to the participants.

 Although it is unclear from the record, the dispute concerning SUFs may be between
Milburn and Jamail, rather than between the City and Jamail. However, as we are remanding for a
determination of all facts related to the three projects, we remand this issue as well.


Cypress Bend Approach Main

 The Cypress Bend Approach Main was the last line constructed, and it connected the
subdivision to the Buttercup Creek Interceptor. Jamail posted a $640,000 letter of credit to the City
to be "reduced by the amount of the contract price for all streets, water, wastewater, and drainage
facilities actually completed in Cypress Bend [Phase] I and approved by the City." (Emphasis
added.) Based on Jamail's requests for refunds, it appears that of the $640,000, approximately
$50,000-$55,000 was used for wastewater facilities.

 Jamail argues that because his letter of credit includes money for wastewater
facilities, it places him under the ordinance. He contends that the letter of credit meets the ordinance
requirements because he posted it with the City and nothing in the ordinance states that the letter of
credit must be exclusively for the reservation of wastewater-line capacity. In addition, he argues that
the City is estopped from denying he can recover under the ordinance based on the 1987 refund.

 The City contends that the ordinance does not cover Jamail's letter of credit for the
Cypress Bend Approach Main. It alleges that the letter of credit was to ensure installation of streets
and utilities for Phase I of the subdivision, and not to reserve line capacity. The City also argues that
even if it did reserve line capacity, the letter of credit refers to Phase I and this case concerns Phase
II of the subdivision.

 The letter of credit to the City regarding the Cypress Bend Approach Main and the
ordinance itself do not prove the City's position as a matter of law. First, the letter of credit is
ambiguous as to whether it includes money to reserve line capacity. Second, it is unclear from the
ordinance itself if the letter of credit must be solely to reserve line capacity or if it can include money
for other items. Third, it is unclear whether the letter of credit was only for Phase I or if it was for
Phase II as well. Therefore, we conclude that material fact issues prevented a summary judgment
determination.

 Resolving all doubts in favor of Jamail, as nonmovant, we hold that disputed fact
issues remain relating to each project. Each project involves genuine issues of material fact that are
impossible to resolve as a matter of law without further evidence. Thus, we sustain Jamail's point
of error.


City's Request for Cost and Fees

 The district court required each party to pay its own costs, which is within the court's
discretion. Oake v. Collin County, 692 S.W.2d 454, 455 (Tex. 1985); Texas State Bd. of Plumbing
Exam'rs v. Associated Plumbing-Heating-Cooling Contractors of Tex., Inc., 31 S.W.3d 750, 753
(Tex. App.--Austin 2000, pet. denied); McCarthy Bros. Co. v. Cont'l Lloyds Ins. Co., 7 S.W.3d 725,
731 (Tex. App.--Austin 1999, no pet.). The City requests that this Court award its costs, but the
City did not file its own notice of appeal. An appellate court cannot grant more relief to a party than
was granted by the lower court without that party filing a notice of appeal, unless there is just cause. 
Tex. R. App. P. 25.1(c); see also McDonald v. The Boat Barn, 994 S.W.2d 763, 765 (Tex.
App.--Houston [1st Dist.] 1999, no pet.). The City waived any right it may have had to costs by not
filing a notice of appeal.

 Even if the City had filed a notice of appeal, it offers no argument nor authority for
this request. Failure to support an argument on appeal waives the issue. Tex. R. App. P. 38.1(h);
see also In re Barr, 13 S.W.3d 525, 555 (Tex. 1998); Ebner v. First State Bank of Smithville, 27
S.W.3d 287, 303 n.28 (Tex. App.--Austin 2000, pet. denied). We defer to the district court's
judgment and deny the City's request.

CONCLUSION

 All three of the projects are factually complex, involving many genuine issues of
material fact embedded in the dispute. Therefore we hold that this case is inappropriate for
summary-judgment disposition. We reverse and remand for further proceedings.



 

 Mack Kidd, Justice

Before Justices Kidd, Yeakel and Puryear

Reversed and Remanded

Filed: June 29, 2001

Do Not Publish

1. An LUE reflects the amount of water consumed and wastewater generated by the average
single-family detached dwelling on a daily basis.
2. It is unclear from the record whether each of these projects was actually constructed or if only
improvements were necessary to serve the subdivision's needs. Although we discuss each as if it
was constructed rather than improved upon, it is immaterial to the resolution of this case if new
construction or only improvements to existing facilities were completed.
3. The City does not contest the calculation used by Jamail to determine this amount.
4. The record includes no evidence to explain why this check exceeded the amount requested.
5. Jamail also requested a declaratory judgment that he is entitled to subsequent user fees (SUFs)
under a contract regarding the Buttercup Creek Interceptor between the City and Milburn, Inc. As
Jamail's request for SUFs is specific to the Buttercup Creek Interceptor, this claim will be discussed
in due course. 
6. He relies on dictionary definitions of credit. See Black's Law Dictionary 254 (6th ed. 1991).
7. Further complicating the issue, Jamail states in his deposition that the City has provided him
with two other cash refunds under the ordinance for the Anderson Mill Park and High Meadows
subdivisions.


 if the letter of credit must be solely to reserve line capacity or if it can include money
for other items. Third, it is unclear whether the letter of credit was only for Phase I or if it was for
Phase II as well. Therefore, we conclude that material fact issues prevented a summary judgment
determination.

 Resolving all doubts in favor of Jamail, as nonmovant, we hold that disputed fact
issues remain relating to each project. Each project involves genuine issues of material fact that are
impossible to resolve as a matter of law without further evidence. Thus, we sustain Jamail's point
of error.


City's Request for Cost and Fees

 The district court required each party to pay its own costs, which is within the court's
discretion. Oake v. Collin County, 692 S.W.2d 454, 455 (Tex. 1985); Texas State Bd. of Plumbing
Exam'rs v. Associated Plumbing-Heating-Cooling Contractors of Tex., Inc., 31 S.W.3d 750, 753
(Tex. App.--Austin 2000, pet. denied); McCarthy Bros. Co. v. Cont'l Lloyds Ins. Co., 7 S.W.3d 725,
731 (Tex. App.--Austin 1999, no pet.). The City requests that this Court award its costs, but the
City did not file its own notice of appeal. An appellate court cannot grant more relief to a party than
was granted by the lower court without that party filing a notice of appeal, unless there is just cause. 
Tex. R. App. P. 25.1(c); see also McDonald v. The Boat Barn, 994 S.W.2d 763, 765 (Tex.
App.--Houston [1st Dist.] 1999, no pet.). The City waived any right it may have had to costs by not
filing a notice of appeal.

 Even if the City had filed a notice of appeal, it offers no argument nor authority for
this request. Failure to support an argument on appeal waives the issue. Tex. R. App. P. 38.1(h);
see also In re Barr, 13 S.W.3d 525, 555 (Tex. 1998); Ebner v. First State Bank of Smithville, 27
S.W.3d 287, 303 n.28 (Tex. App.--Austin 2000, pet. denied). We defer to the district court's
judgment and deny the City's request.

CONCLUSION

 All three of the projects are factually complex, involving many genuine issues of
material fact embedded in the dispute. Therefore we hold that this case is inappropriate for
summary-judgment disposition. We reverse and remand for further proceedings.



 

 Mack Kidd, Justice

Before Justices Kidd, Yeakel and Puryear

Reversed and Remanded

Filed: June 29, 2001

Do Not Publish

1. An LUE reflects the amount of water consumed and wastewater generated by the average
single-family detached dwelling on a daily basis.
2. It is unclear from the record whether each of these projects was actually constructed or if only
improvements were necessary to serve the subdivision's needs. Although we discuss each as if it
was constructed rather than improved upon, it is immaterial to the resolution of this case if new
construction or only improvements to existing facilities were completed.